IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY WAKEFIELD and JOHNNY WAKEFIELD, | )<br>)<br>) |
| Plaintiffs, | ) Civil Action No. 19-1657<br>) |
| v. | ) Judge Marilyn J. Horan<br>) |
| BEAVER AREA SCHOOL DISTRICT, | )<br>) |
| Defendant. | ) |

**OPINION AND ORDER**

On December 20, 2019, Plaintiff Tammy Wakefield filed suit against Defendant Beaver Area School District, alleging claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. (2:19-cv-1657, ECF No. 1 [hereinafter T. Wakefield Compl.]).  On February 20, 2020, her husband, Plaintiff Johnny Wakefield, also filed suit against the Defendant School District, alleging claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and a claim of age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*. (2:20-cv-261, ECF No. 1 [hereinafter J. Wakefield Compl.]).  The Court consolidated the two cases on February 24, 2020.  (ECF. No. 5).  On May 8, 2020, the Defendant School District filed a Motion to Dismiss both Complaints for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (ECF. No. 9).  The parties filed briefs for the Court's consideration, (ECF. Nos. 10, 14), and the Court heard oral argument on the Motion.

For the following reasons, Defendant Beaver Area School District's Motion to Dismiss will be granted in part and denied in part.

1

**I. Background**

Johnny Wakefield began working as a substitute custodian for the Beaver Area School District in October 2017. (J. Wakefield Compl., at ¶ 7). Mr. Wakefield worked an average of forty hours a week, primarily at Dutch Ridge Elementary School. *Id.* at ¶ 9. His wife, Tammy Wakefield, began working for the School District in June 2018 as a "summer help" custodian and then became a substitute custodian in September 2018. (T. Wakefield Compl., at ¶ 6). She worked twenty to thirty hours a week, also at Dutch Ridge Elementary. *Id.* at ¶ 22. Both Mr. and Mrs. Wakefield are over the age of forty. (J. Wakefield Compl., at ¶ 6; T. Wakefield Compl., at ¶ 5).

Mrs. Wakefield alleges that after beginning work at Dutch Ridge Elementary in June 2018, her supervisor, Charles Dean, began soliciting sexual acts from her. (T. Wakefield Compl., at ¶ 8). Mr. Dean asked her, "Do you want to make an extra 50 bucks?", and told her to "Get on your knees for me." *Id.* at ¶¶ 9–10. Mrs. Wakefield objected, but Mr. Dean responded, "I'm being serious, I will pay you, nobody has to know." *Id.* at ¶ 12. Mr. Dean repeated this solicitation "everyday (sic) all summer." *Id.* at ¶ 13. Mr. Dean also approached Mr. Wakefield with his request for sexual acts from Mrs. Wakefield. (J. Wakefield Compl., at ¶ 11). Mr. Wakefield told Mr. Dean to stop this behavior, but Mr. Dean continued asking[1] for sexual favors from Mrs. Wakefield "at least twice a week." (T. Wakefield Compl. at ¶ 18; J. Wakefield Compl., at ¶ 12).

---

[1] The two Complaints in this matter refer to Mr. and Mrs. Wakefield in various and inconsistent ways, sometimes referring to them each as "Plaintiff" or "Wakefield," other times referring to them by their first names, and still other times by their full names. This made it difficult for the Court to determine who was involved in some of the alleged incidents. In this particular incident, it is unclear to the Court whether Mr. Dean repeated his request to Mr. Wakefield or Mrs. Wakefield "at least twice a week."

On December 18, 2018, Mrs. Wakefield reported Mr. Dean's behavior to the School District's facilities manager and director of business services. (T. Wakefield Compl., at ¶ 19; J. Wakefield Compl., at ¶ 13). Shortly thereafter, the School District transferred Mr. Wakefield from Dutch Ridge Elementary to Beaver Junior Senior High School. (J. Wakefield Compl., at ¶ 14). At the end of January 2019, Mr. Wakefield also reported Mr. Dean's alleged sexual harassment of Mrs. Wakefield to the director of business services, the superintendent, and the head custodian. (J. Wakefield Compl., at ¶ 16).

On February 8, 2019, the facilities manager responded to Mrs. Wakefield's report by letter, stating that disciplinary action had been taken against Mr. Dean. (T. Wakefield Compl., at ¶ 21). Mrs. Wakefield alleges, however, that the School District did not actually discipline Mr. Dean in accordance with the disciplinary measures outlined in the letter, "as he continued to attend custodian manager meetings." *Id.* at ¶ 25. She also alleges that after receiving the letter, her hours were decreased from between twenty and thirty hours per week at Dutch Ridge Elementary to less than ten hours per week at other schools in the School District. *Id.* at ¶ 22.

The following month, in March 2019, the School District transferred Mr. Wakefield from the high school to College Square Elementary. (J. Wakefield Compl., at ¶ 20). He claims that two other "[s]ubstantially younger [male] custodians . . . were provided better treatment and were permitted to remain at the High School." *Id.* at ¶ 21. On March 9, 2019, Mr. and Mrs. Wakefield each filed a charge of discrimination with the EEOC.[2] *Id.* at ¶ 22. On April 27, 2019, the School District stopped offering Mrs. Wakefield work completely. (T. Wakefield Compl., at ¶ 23). No reason was given for her termination. *Id.* at ¶ 24. A few days later, on April 30, 2019, the School District also terminated Mr. Wakefield. (J. Wakefield Compl., at ¶ 23). The head

---

[2] This fact is found only in Mr. Wakefield's Complaint.

3

custodian told Mr. Wakefield that his "services were no longer required" due to "lack of work." *Id.* at ¶¶ 24–25. Mr. Wakefield claims that this reason was pretextual because there was available work and the head custodian told Mr. Wakefield that a "new girl," Kim, was replacing him. *Id.* at ¶¶ 26–27. Kim is at least ten years younger than Mr. Wakefield. *Id.* at ¶ 32. Mr. Wakefield further claims that the School District also hired two other younger custodians. *Id.* at ¶ 28. Mr. Wakefield subsequently filed a second charge of discrimination with the EEOC. *Id.* at ¶ 35.

Mr. Wakefield contacted multiple supervisors for summer employment but received no offers. *Id.* at ¶ 31. Mrs. Wakefield likewise contacted the head custodians at the high school and College Square Elementary and informed them that she wanted to work if work was available. (T. Wakefield Compl., at ¶ 27). In June of 2019, Mrs. Wakefield also contacted the facilities manager for work. *Id.* at ¶ 28. The facilities manager told her that he filled the positions without contacting her, even though she was on the substitute list. *Id.* at ¶¶ 29–30. Mrs. Wakefield believes that the School District passed over her as retaliation for reporting the sexual harassment. *Id.* at ¶ 30. Later, in August 2019, the head custodian at the high school contacted Mrs. Wakefield about working a day at the high school. *Id.* at ¶ 31. Mrs. Wakefield declined this offer when she learned that she would have to work alongside Mr. Dean. *Id.* at ¶ 32.

Mr. and Mrs. Wakefield filed suit in federal court against the School District. In Count I of her Complaint, Mrs. Wakefield brings a claim for Title VII sexual harassment. (T. Wakefield Compl., at ¶¶ 35–39). In Count II, she brings a claim for Title VII retaliation. *Id.* at ¶¶ 40–44. In Mr. Wakefield's Complaint, he alleges, in Count I, a Title VII gender discrimination claim, and, in Count II, a Title VII retaliation claim. Lastly, in Count III of his Complaint, Mr. Wakefield also brings an ADEA age discrimination claim. (J. Wakefield Compl., at ¶¶ 37–53).

The School District initially sought dismissal of Mr. and Mrs. Wakefield's claims on two grounds: failure to exhaust administrative remedies and failure to state a claim for which relief may be granted. (ECF No. 9, at 1). At oral argument, the School District withdrew its arguments regarding administrative exhaustion.[3] What remains before the Court is the School District's challenge to the merits of Mr. and Mrs. Wakefield's claims under Rule 12(b)(6). *Id.* at 3.

## II. Legal standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should be granted when the claimant fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When determining a complaint's sufficiency, the court must first "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675

---

[3] The School District argued in its Motion that Mrs. Wakefield failed to exhaust her administrative remedies, in part because her Complaint fails to allege any facts regarding her EEOC charges beyond a generic statement that she "exhausted administrative remedies and files this complaint timely." (ECF No. 9, at 1; T. Wakefield Compl, at ¶ 4). The School District also argued that there was an outstanding EEOC charge for which Mrs. Wakefield had not received a right-to-sue letter from the EEOC. (ECF No. 9, at 2). However, at oral argument, the School District withdrew these arguments because Mrs. Wakefield provided copies of her first two EEOC charges and the corresponding right-to-sue letter, and because 180 days had passed since the filing of Mrs. Wakefield's final EEOC charge, thus exhausting the administrative process.

As to Mr. Wakefield, whose Complaint alleges that he filed two EEOC charges, (J. Wakefield Compl., at ¶¶ 22, 35), the School District attempted to dispute the facts in the Complaint by simply arguing that Mr. Wakefield "has never filed a claim with the EEOC," (ECF No. 9, at ¶ 9). As an initial matter, this argument is improper on a Rule 12(b)(6) motion to dismiss, because the Court is to accept as true the factual allegations stated in the Complaint. Second, Mr. Wakefield attached copies of the two EEOC charges and the related right-to-sue letter to his response to the Motion. (ECF No. 14-3). At oral argument, the School District withdrew its administrative exhaustion argument and accepted the authenticity of Mr. Wakefield's EEOC charges. Plaintiffs, however, raised an issue in their response brief and at oral argument regarding the existence of a third EEOC charge by Mr. Wakefield. (ECF No. 14, at 6). The School District did not raise this issue, file a reply brief addressing it, or respond to this point at oral argument. Accordingly, the Court will not address issues surrounding the putative third EEOC charge at this time.

(2009). Next, the court should locate allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Finally, the court should assume the truth of "well-pleaded factual allegations" and "determine whether they could plausibly give rise to an entitlement to relief." *Id.* Although a plaintiff must supply "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," the complaint's factual allegations need only "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 556. Lastly, if the court grants the motion to dismiss for failure to state a claim upon which relief can be granted, the court must allow "a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

**III. Discussion**

A. Tammy Wakefield's Title VII sexual harassment claim—Count I

The School District first challenges Mrs. Wakefield's sexual harassment claim. (ECF No. 10, at 10). To establish a prima facie case of sexual harassment, or hostile work environment, under Title VII, a plaintiff must plead facts showing "(1) the employee suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of" either respondeat superior liability or direct liability, depending on the nature of the harasser's relationship to the plaintiff. *Huston v. P&G Paper Prods. Corp.*, 568 F.3d 100, 104–05 (3d Cir. 2009) (internal quotations omitted). The School District argues that the alleged

harassment is not sufficiently severe or pervasive. (ECF No. 10, at 10). It also argues that it took appropriate steps to address the alleged harassment and therefore cannot be liable for the harasser's conduct. *Id.* at 11.

   *i. Severe or pervasive*

As to whether the conduct at issue is sufficiently "severe or pervasive," the reviewing court must "look[] at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotations omitted). The alleged harassment "'must be extreme [enough] to amount to a change in the terms and conditions of employment.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Furthermore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not suffice. *Faragher*, 524 U.S. at 788 (internal quotations omitted).

The School District argues that the sexual harassment alleged in Mrs. Wakefield's Complaint is not sufficiently severe and pervasive because "Ms. Wakefield has alleged only one incident of harassment in the instant complaint." (ECF No. 10, at 10). The School District then states, "While the complaint implies that harassing behavior continued, no allegations of such are stated within the complaint in front of this court, or the complaint filed with the EEOC." *Id.* However, contrary to the School District's argument, Mrs. Wakefield directly states that Mr. Dean's sexual solicitations continued. After describing the first incident, in which Mr. Dean asked Mrs. Wakefield if she wanted to earn fifty dollars and he told her to get on her knees, Mrs. Wakefield alleges, "This type of sexual harassment continued everyday (sic) all summer." (T. Wakefield Compl., at ¶¶ 9–10, 13). Furthermore, the facts alleged indicate that Mr. Dean's

statements were not "simple teasing." In addition to repeatedly asking Mrs. Wakefield for oral sex, Mr. Dean stated, "I'm being serious, I will pay you, nobody has to know," and he repeated his statements to Mr. Wakefield. (T. Wakefield Compl, at ¶ 12). Even if Mr. Dean were joking, a reasonable person would find Mr. Dean's conduct humiliating and beyond "a mere offensive utterance." Mr. Dean's repeated solicitations of Mrs. Wakefield, as alleged in her Complaint, therefore satisfy the "severe or pervasive" prong of the prima facie case.

> *ii. Employer liability*

Turning next to the School District's argument that it cannot be liable for Mr. Dean's conduct, "[t]he basis of an employer's liability for hostile environment sexual harassment depends on whether the harasser is the victim's supervisor or merely a co-worker." *Huston v. P&G Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). If the hostile work environment is created by the victim's supervisor, the employer is subject to vicarious liability. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998). However, "[w]hen the hostile work environment is created by a victim's non-supervisory co-workers, the employer is not automatically liable." *Huston*, 568 F.3d at 104. Instead, an employer is liable for co-worker harassment "only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." *Id.* In other words, "an employer may be directly liable for non-supervisory co-worker sexual harassment only if the employer was negligent in failing to discover the co-worker harassment or in responding to a report of such harassment." *Id.* at 104–05.

The School District points out that Mrs. Wakefield's Complaint acknowledges her receipt of a letter in which the School District informed her of its discipline of Mr. Dean. (ECF No. 10, at 11). According to the School District, the letter establishes that the School District "acted

promptly and correctly," because it investigated Mrs. Wakefield's report of sexual harassment and "immediately issued corrective actions by way of a safety plan in order to ensure that Mr. Dean had no further contact with Ms. Wakefield." *Id.* However, the School District overlooks two important allegations. First, Mrs. Wakefield alleges that Mr. Dean supervised her. (T. Wakefield Compl., at ¶ 7). The School District thus may be vicariously liable for his actions, regardless of whether it knew or had reason to know of his actions. Second, even if Mr. Dean were "merely a co-worker," Mrs. Wakefield alleges that the School District failed to take appropriate remedial action following her report of the sexual harassment. *Id.* at ¶ 25. Specifically, she alleges that "[i]t is also believed and averred that Dean was not disciplined as described in the letter as he continued to attend custodian manager meetings." *Id.* Mrs. Wakefield has therefore pleaded sufficient facts to show the existence of respondeat superior liability and/or direct liability.

In summary, both bases of the School District's challenge to Mrs. Wakefield's sexual harassment claim lack merit. Accordingly, the School District's Motion to Dismiss will be denied as to Count I of Mrs. Wakefield's Complaint.

B. Tammy Wakefield's Title VII retaliation claim—Count II

Next, the School District challenges the sufficiency of Mrs. Wakefield's retaliation claim. (ECF No. 10, at 12). To establish a prima facie case of retaliation under Title VII, the plaintiff must first show that "she engaged in activity protected by Title VII," that is, she opposed an unlawful practice or participated in the EEOC process. *Anderson v. Mercer Cty. Sheriff Dep't*, 2020 U.S. App. LEXIS 16783, at *4 (3d Cir. May 27, 2020); *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). The plaintiff then must show that "the employer took an adverse employment action against her" and, importantly, that "there was a causal connection between

her participation in the protected activity and the adverse employment action." *Anderson*, 2020 U.S. App. LEXIS 16783, at *4.  The Third Circuit defines an adverse employment action as "an action that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 257 (3d Cir. 2014) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).  Accordingly, "[i]f an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999).

In the present matter, the School District only disputes whether Mrs. Wakefield sufficiently alleges an adverse employment action.[4]  (ECF No. 10, at 12).  In a scattershot approach, the School District gives several reasons why Mrs. Wakefield did not suffer an adverse employment action.  (ECF No. 10, at 12–13).  However, the dispositive fact here is that Mrs. Wakefield alleges that she was terminated, which is plainly an adverse employment action.  (T. Wakefield Compl., at ¶¶ 24, 34).  The School District appears to dispute this fact, arguing that Mrs. Wakefield was not actually terminated.  (ECF No. 10, at 12–13).  But as noted above, the Court is to accept the factual allegations in the Complaint as true.  Mrs. Wakefield has therefore sufficiently alleged the element of adverse employment action, and the School District's dispute about the alleged facts is not relevant to a ruling on a motion to dismiss.  Consequently, the

---

[4] The School District also contends that "because no adverse action was suffered, there can be no causal nexus between the employee's protected activity and the adverse action."  (ECF No. 10, at 12).  But beyond this cursory statement, the School District offers no further reasoning or argument on this point.  The Court therefore will not address the issue of causation.

School District's Motion to Dismiss will be denied as to Mrs. Wakefield's retaliation claim, found in Count II of her Complaint.

C. Johnny Wakefield's Title VII gender discrimination claim—Count I

Turning now to Mr. Wakefield's claims, the School District first argues that Mr. Wakefield fails to state a claim for discrimination on the basis of his sex. (ECF No. 10, at 13). In general, a plaintiff alleging sex discrimination must plead facts showing "that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances could give rise to an inference of unlawful discrimination." *Cooper v. Thomas Jefferson Univ. Hosp.*, 743 Fed. App'x. 499, 502 (3d Cir. 2018). However, in cases "against a member of the proverbial majority, here, men, the Third Circuit has articulated a modified" prima facie case. *Sauchelli v. United States Postal Serv.*, 2010 U.S. Dist. LEXIS 94336, at *23 (D.N.J. Sept. 10, 2010) (citing *Iadimarco v. Runyon*, 190 F.3d 151 (3d Cir. 1999)). A male plaintiff establishes a prima facie case of sex discrimination by pleading facts showing "that the defendant treated some people less favorably than others based on gender." *Id.* at *24; *Kahan v. Slippery Rock University of Pennsylvania,* 50 F. Supp. 3d 667, 687 (W.D. Pa. 2014). In other words, the plaintiff does not need to be a member of a "protected class," but he must show that he was discriminated against based on a protected trait: his sex or gender. *Kahan*, 50 F. Supp. 3d at 687. And importantly, it is not sufficient to allege only that a person of a different gender received different treatment; such a scenario could very well be the result of happenstance. The plaintiff must also allege facts showing that he was treated differently *because of* his gender. *See Shaw v. Pittsburgh Bd. of Pub. Educ.*, 2009 U.S. Dist. LEXIS 2340, at *12 (W.D. Pa. Jan. 12, 2009) (citing *Paich v. Nike, Inc.*, 2008 U.S. Dist. LEXIS

11

20339, at *21–22 (W.D. Pa. Mar. 12, 2008)) ("[T]he fact that a woman received a more desirable assignment instead of a man does not, alone, establish gender discrimination.").

Here, the School District argues that not only is Mr. Wakefield's discrimination claim insufficient, but it also asserts that the totality of the alleged facts undermines his claim. (ECF No. 10, at 13–14). The School District contends that Mr. Wakefield alleges only that a woman was hired to replace him, and that this fact, without more, does not establish his gender discrimination claim. *Id.* Although the Court notes that Mr. Wakefield also alleges that the School District "continue[d] to hire younger female custodians for the summer of 2019 and the 2019/2020 school year," (J. Wakefield Compl., at ¶ 34), neither of these facts supports that he was treated differently *because of his gender*. Moreover, and as the School District points out, Mr. Wakefield also alleges that two male employees were treated better than he was. *Id.*; (J. Wakefield Compl., at ¶¶ 21, 27). Therefore, although Mr. Wakefield pleads facts showing that some people were treated differently, he does not plead facts to show that they were treated differently because of their gender. As such, the School District's Motion to Dismiss will be granted as to Mr. Wakefield's gender discrimination claim, found in Count I of his Complaint.

D. Johnny Wakefield's Title VII retaliation claim and ADEA claim—Counts II and III

Lastly, the School District challenges Mr. Wakefield's Title VII retaliation and ADEA claims, arguing that Mr. Wakefield fails to adequately allege an adverse employment action. (ECF No. 10, at 14–16). As explained above, to plead a Title VII retaliation claim, the plaintiff must allege, among other things, that he suffered an adverse employment action. Similarly, a prima facie case of age discrimination under the ADEA also requires a showing that the plaintiff suffered an adverse employment action. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). As stated above, an adverse employment action "is an action that

alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Budhun*, 765 F.3d at 257 (internal quotations omitted). And, under the burden-shifting framework of discrimination cases, if a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to present a legitimate nondiscriminatory reason for the adverse employment action. *Willis*, 808 F.3d 638, 644. If the employer presents a legitimate nondiscriminatory reason, the burden then shifts back to the plaintiff to show that the reason given was pretextual. *Id.*

The School District first argues that Mr. Wakefield has not alleged that he suffered an adverse employment action. (ECF No. 10, at 14–15). However, like Mrs. Wakefield, Mr. Wakefield alleges that the School District terminated his employment. (J. Wakefield Compl., at ¶ 23). Thus, despite the School District's arguments to the contrary, Mr. Wakefield has satisfied the element of adverse employment action for both his Title VII retaliation claim and his ADEA claim. The School District also argues, in relation to Mr. Wakefield's ADEA claim, that Mr. Wakefield's Complaint evinces a legitimate nondiscriminatory business reason for Mr. Wakefield's termination. (ECF No. 10, at 15). Specifically, the School District states that "Mr. Wakefield has acknowledged that there was a lack of work within the District." *Id.* But the School District seems to overlook that Mr. Wakefield alleges that this reason given for his termination was pretextual. Mr. Wakefield alleges that the School District hired someone to replace him and that it then hired other custodians after his termination, indicating that there was, in fact, no lack of work. (J. Wakefield Compl., at ¶¶ 26–28). Mr. Wakefield has therefore offered facts to support his assertion that the reason given for his termination was pretextual.

Accordingly, the School District's Motion will be denied as to Mr. Wakefield's Title VII retaliation claim in Count II and his ADEA claim in Count III.

**IV. Conclusion**

THEREFORE, based on the foregoing, Defendant Beaver Area School District's Motion to Dismiss is DENIED as to Tammy Wakefield's Complaint, and GRANTED IN PART and DENIED IN PART as to Johnny Wakefield's Complaint. Regarding Johnny Wakefield's Complaint, the Motion is granted only as to Mr. Wakefield's Title VII gender discrimination claim in Count I. The Motion is denied as to all other claims.

FURTHERMORE, Johnny Wakefield is given leave to amend his Complaint in accordance with this Opinion no later than September 4, 2020. Defendant's Answer to both Complaints shall be filed within 21 days of service of Mr. Wakefield's Amended Complaint or by September 25, 2020, whichever is sooner.

IT IS SO ORDERED.

DATE   August 21, 2020

Marilyn J. Horan
United States District Judge